IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHERRY STUDLI,                                    )
                                                  )
                    Plaintiff,                    )
                                                  )
    -vs-                                          )
                                                    Civil Action No. 05-374J
                                                  )
CHARLES A. CRIMONE, Director Children &           )
Youth Services, et al.,                           )
                                                  )
                    Defendants.                   )

AMBROSE, Chief District Judge.

## MEMORANDUM OPINION and ORDER[1]

Plaintiff Sherry Studli ("Studli") is the mother of six children - some of whom have now attained the age of majority. She contends that the remaining Defendants George Hazlitt and Debra Rugg, both employees of Somerset County's Children and Youth Services ("CYS") and Somerset County itself, deprived her of various constitutional rights in violation of 42 U.S.C. § 1983 in connection with the removal of those children from her home. The Defendants have filed a Motion for Summary Judgment. See Docket No. [47]. They contend that Studli's failure to produce any evidence of a custom, practice or policy which deprived her of the rights identified in her Amended Complaint mandates the entry of judgment in

---

[1] This Court has issued three separate Opinions addressing Motions to Dismiss, see Docket Nos. 17, 27 and 33. The factual and procedural history of this case, set forth in those Opinions, is incorporated herein.

1

favor of Somerset County on all § 1983 claims. Defendants Hazlitt and Rugg contend that they are entitled to a finding of absolute and / or qualified immunity. The Defendants argue in the alternative that Studli is barred from attempting to relitigate issues fully and finally decided by the Pennsylvania Superior Court and that the record is devoid of any evidence which would support a finding of punitive damages.

After careful consideration, and for the reasons set forth below, the Motion is granted. Judgment is entered in favor of the Defendants.

STANDARD OF REVIEW

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material when it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Rule 56 mandates the entry of judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The

2

burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 248.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322.  Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. <u>Id</u>. at 324.

ANALYSIS

I. <u>MUNICIPAL LIABILITY</u>

As stated in my previous Opinion, "a county (or its agencies) may not be sued under a *respondeat superior* theory." <u>Marran v. Marran</u>, 376 F.3d 143, 156 (3d Cir. 2004).  Rather, a local governing body may only "be sued directly under § 1983 for monetary, declaratory, or injunctive relief where … the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers," or where the "constitutional deprivations [were] visited pursuant to a governmental 'custom.'" <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 691 (1978).  In other words, "a *prima facie* case against a county must involve an allegation of a policy or custom that directed or caused the constitutional deprivation." <u>Marran</u>, 376 F.3d at 156.

3

Somerset County insists that the record is devoid of any evidence that any of its customs, practices or policies caused a constitutional deprivation. I agree.

Studli identifies in the Amended Complaint two customs, practices and / or policies employed by Somerset County:

> (1) "Children and Youth Services of Somerset County was organized to operate a business that apparently profits to misuse of children for budget purposes" [sic]; and
>
> (1) Somerset County conducts its CYS on a menu that no children are placed into Somerset County foster homes, but are contracted out of the county for such placement.

See Amended Complaint, ¶ 20, 21.[2] Yet Studli has not provided any evidence that such policies, customs or practices actually exist, much less that such policies, customs or practices were the moving force behind the alleged constitutional violations. She states in her "Response to Defendant's Concise Statement of Undisputed Material Facts In Support of Defendants' Motion for Summary Judgment" (see Docket No.51), that "CYS engaged in the practice to garner money from various sources," but she failed to provide any citation to the record in support of her assertion. The Local Rules governing summary judgment motions require that the Responsive Concise Statement of Facts contain citations to the record. See LR

---

[2] The Amended Complaint did not clearly identify any customs, practices or policies. In reviewing challenges to the sufficiency of the Amended Complaint, and taking into consideration Studli's *pro se* status, I construed Studli's allegations as raising, at most, the above identified customs, practices or policies. I note that Studli has never countered that my construction of her allegations in this regard was incorrect.

56.1c(1)(b). Nevertheless, given Studli's *pro se* status, I did read through each document she submitted in opposition to summary judgment and simply find no evidence suggesting that CYS operates for profit or misuses children for budgetary purposes. Indeed, the only uncontradicted facts of record indicate that CYS is not a business entity or a for-profit group. Rather, it simply receives its funding through reimbursements from the federal, state and county governments for children in placement. See Crimone Deposition, p. 11-22.

Additionally, Studli has not proffered any evidence supporting her assertion that CYS has a policy of not placing any children in Somerset County foster homes. To the contrary, the evidence of record indicates that CYS's primary goal is to keep the placement of children in Somerset County. See Crimone Dep., p. 17-19. CYS has its own foster care home providers, as well as the Children's Aid Home and the CRR - Community Residential Rehabilitation. The testimony of record established that children are placed outside of Somerset County only if no other placement inside the County is available. At the time Crimone was deposed in 2007, approximately 83 children in Somerset County were in placement and "a large number of those kids" who were in foster care were in Somerset County. Id., p. 21-22. Indeed, the only evidence of record contradicts Studli's bald assertion that no children are placed in foster care within Somerset County.

Because Studli has failed to proffer any evidence in support of her contentions that Somerset County has a custom, practice or policy which caused the deprivation of her constitutionally guaranteed rights, her claims must fail.

Accordingly, summary judgment is entered in favor of Somerset County on all claims asserted against the County and / or CYS.

II. <u>HAZLITT AND RUGG - IMMUNITY</u>

Studli also asserts § 1983 claims against Rugg and Hazlitt, both of whom served as caseworkers with respect to certain of Studli's children. Rugg and Hazlitt contend that they are entitled to absolute and / or qualified immunity for all actions taken in connection with the Studli children. They demand the entry of summary judgment in their favor on these bases.

I agree with Rugg and Hazlitt that the Third Circuit court's decision in <u>Ernst v. Child and Youth Services of Chester County</u>, 108 F.3d 486 (3d Cir. 1997) grants Rugg and Hazlitt absolute immunity for their activities in preparing for, initiating and prosecuting the Studli children's dependency cases. Thus, to the extent that Studli's claims are premised upon such actions, they are entitled to absolute immunity. However, the <u>Ernst</u> court did not extend absolute immunity to investigative or administrative action taken outside the context of a judicial proceeding. <u>Ernst</u>, 108 F.3d at 197 n. 7. Thus, a caseworker may be liable for conduct taken "during the investigative phase of a child custody proceeding," "or for certain actions taken after a judicial proceeding." <u>Underwood v. Beaver County Children and Youth Services</u>, Civ. No. 3-1475, 2007 WL 3034069 at * 1 (W.D. Pa. Oct. 7, 2007), <u>citing</u>, <u>Miller v. City of Philadelphia</u>, 174 F.3d 368, 376 n. 6 (3d Cir. 1999) and <u>Wilson v. Rackmill</u>, 878 F.2d 772, 775-76 (3d Cir. 1989).

A review of the allegations in the Amended Complaint and the Responsive

Concise Statement of Material Facts suggests that Studli complains of administrative actions taken <u>after</u> judicial action.[3]  For instance, the Amended Complaint makes only one specific allegation directed toward Hazlitt:

> [i]n February 2006, Defendant Hazlitt prepared, verified and signed a patently fraudulent "Primary Review Hearing Report" that falsely accused the mother of recently "threatening suicide on at least numerous occasions" and of being diagnosed with "Bi Polar Disorder urging medication management. ["]

<u>See</u> Amended Complaint, ¶ 26.  Studli's Responsive Concise Statement of Facts makes no mention of anything about Hazlitt other than that he lied about the information referenced in the above Report.  The Report was prepared <u>after</u> the issue of dependency had been adjudicated.  It was completed as part of what appears to be ongoing administrative duties relating to tracking Studli's and her child's progress and changes in visitation. <u>See</u> Defendants' Ex. C10.  Thus, the facts before me indicate that Hazlitt's actions in preparing the document were administrative in nature.  The Defendants did not cite me to any case law or indeed any reasoned argument in support of their assertion that Hazlitt's conduct occurred while preparing for, initiating or prosecuting a dependency action.  Consequently, I find that Hazlitt is not entitled to absolute immunity.

---

[3] Studli's Responsive Concise Statement of Material Facts contains various allegations, again, not supported by any citation to the record, that "CYS" engaged in certain actions.  For instance, Studli contends that "CYS" forced a Studli child to have an abortion and that "CYS" negligently exposed a Studli child to put her in a coma.  It is not clear whether Studli directs these allegations at CYS as an entity (and thus at Somerset County).  If so, the allegations are moot because she has not provided any evidence linking these allegations to the alleged customs, practices or policies identified above.  Perhaps Studli intends instead to direct these allegations to Rugg or Hazlitt.  Yet, she has not provided any direct citation to evidence indicating that Rugg or Hazlitt had personal involvement with these events.

I similarly reject the contention that Rugg is entitled to absolute immunity. In her Responsive Concise Statement of Facts, Studli contends that Rugg was responsible for the denial of medical treatment to one of Studli's children who had been injured during a car accident. See Docket No. 51-1, ¶ F.[4] The undisputed facts of record indicate that the car accident occurred after the child had been removed from Studli's care and had been placed at the Bradley Center. Consequently, Rugg is not entitled to absolute immunity.

Rugg and Hazlitt argue, in the alternative, that they are entitled to "qualified immunity as public officials acting in good faith." See Docket No. 48, p. 12. To determine whether Rugg and Hazlitt are entitled to qualified immunity, I must engage in a two step analysis. "First, the court must determine whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right." Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). If a violation is demonstrated, I must then determine "whether the constitutional or statutory right ... was 'clearly established.'" Williams, 455 F.3d at 190. "A right is clearly established when its meaning is 'sufficiently clear that a reasonable official would understand what he is doing violates that right.'" Bayer v. Monroe County Child & Youth Services, Civ. No. 4-2505, 2007 WL 3034009 at * 11 (M.D. Pa. Oct. 15, 2007), quoting, Saucier v. Katz,, 533 U.S. 194, 202, 121 S. Ct. 2151 (2001).

The first questions before me then, are whether Hazlitt's execution of the

---

[4] No other specific allegations are made, either in the Amended Complaint or in the Responsive Concise Statement of Facts, relating to Rugg.

Hearing Report and Rugg's involvement in the medical treatment following the car accident violate Studli's constitutional or statutory rights. I conclude that they do not. Turning first to Hazlitt's report, I can only presume that Studli's claim against Hazlitt is premised upon the fundamental liberty interest in the care, custody and management of her children protected by the substantive due process clause. See Miller v. City of Philadelphia, 174 F.3d 368, 374 (3d Cir. 1999) (citations omitted).[5]

> The touchstone of due process is the protection of the individual against arbitrary action of government. Wolff v. McDonnell, 418 U.S. 539, 558, 94 S. Ct. 2963 (1974). In cases like this, where abusive action by a member of the executive branch is alleged, 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense." County of Sacramento v. Lewis, 523 U.S. 833, 118 S. Ct. 1708, 140 L.Ed.2d 1043 (1998) (citation and internal quotation marks omitted). To generate liability, executive action must be so ill-conceived or malicious that it 'shocks the conscience.' Id. at 1717. Critically, under this standard, officials will not be held liable for actions that are merely negligent.

Miller, 174 F.3d at 374-75 (internal citations omitted).

Hazlitt's mere act in preparing and signing the February 2006 Permanency Review Report was not so arbitrary as to "shock the conscience." Studli contends

---

[5] Though the Amended Complaint also includes references to the First Amendment and the Fourth Amendment, I cannot see, nor does Studli explain (she did not file a Brief in Opposition to summary judgment), how the Hearing Report would have implicated her rights to free speech, freedom of assembly, the freedom to petition or the right to be free from unreasonable searches and seizures. Nor does Studli's reference to the guarantees of procedural due process appear implicated here. The Procedural Due Process Clause guarantees the opportunity to be heard at a meaningful time and in a meaningful manner. Matthews v. Eldridge, 424 u.s. 319, 333 (1976). The Pennsylvania legislature has provided extensive pre-deprivation and post-deprivation procedures regarding taking a child into custody. See 42 Pa. Cons. Stat. Ann. Section 6324 and 6315. There is no allegation that Hazlitt failed to follow these procedures, or that these procedures are themselves inadequate. Rather, Studli appears angered by the alleged "lie" included in the Report - something not protected by procedural due process guarantees.

that the Report falsely accused her of recently threatening suicide and of being diagnosed with bipolar disorder. <u>See</u> Amended Complaint, ¶ 26. Yet the uncontradicted evidence of record reveals that the portion of the Report which contains the objected to statements falls under the heading "Why was placement necessary?" CYS policy requires that the information in this section remain the same throughout each dependency case. <u>See</u> Rugg Dep., p. 16-17 and CI-C11. Hazlitt did not draft the original language. <u>See</u> Defendants Ex. C1 (signed by caseworker Palaguta). Thus, Hazlitt simply cut and pasted information previously drafted by another CYS employee, as he was required by CYS policy. Hazlitt's act of incorporating information in compliance with agency policy can hardly be said to "shock the conscience." Additionally, Hazlitt's writing cannot be said to have had any effect upon Studli's substantive due process right. The Permanency Review Report contains a signature line, which Studli signed, stating that she agreed with the Permanency Review plan. <u>See</u> Docket No. 50-13, p. 15. While I do not mean by this reference to suggest that Studli agreed with the remarks regarding bipolar disorder or suicide attempts, I do mean that she agreed with the provisions regarding dependency and visitation and other conditions and restrictions on her right to the care, custody and management of her children. Thus, Studli herself agreed to the restrictions the February 2006 Report kept in place. Based upon these undisputed facts, I find that Hazlitt's conduct did not shock the conscience. Because Hazlitt's conduct did not amount to a constitutional violation, I need not assess whether he is entitled to qualified immunity.

Turning next to Rugg's conduct, again, Studli does not specifically identify the constitutional right allegedly violated. Studli's allegations concerning Rugg focus upon the failure to timely secure medical treatment for Studli's child following a car accident. Such allegations do not appear to implicate either procedural due process guarantees or guarantees against unwarranted search and seizures. Consequently, I can only presume that Studli's claim against Rugg is also based upon the fundamental liberty interest in the care, custody and management of children protected by the Substantive Due Process Clause.

Although Studli makes general allegations that her child did not receive timely medical attention because of Rugg, she fails to provide any direct citation to the record in support of her assertion. Indeed, the uncontradicted evidence of record establishes that the child was residing at the Bradley Center in Pittsburgh when the accident occurred. The Bradley Center never contacted Rugg to tell her of the accident. In fact, Rugg did not learn of the accident until Studli informed her of the same by way of a telephone call. See Docket No. 50-3, p. 31-35.[6] Studli acknowledges that when Rugg did learn of the accident, Rugg immediately arranged to have the child seen by a physician. See Studli Dep., p. 81-82. A caseworker who obtains a visit with a physician within one day of being informed that a child had been in a car accident, can hardly be said to constitute arbitrary and egregious conduct that "shocks the conscience." Simply stated, Rugg's conduct in this instance did not

---

[6] Studli testified by way of deposition that she called Rugg when she first learned of the accident, but was unable to reach her because Rugg was out of the office, possibly on vacation. Regardless of where Rugg was, Studli does acknowledge that once she informed Rugg of the accident, the child was seen by a physician the next day.

violate Studli's constitutional right.  Accordingly, I need not proceed any further in considering the defense of qualified immunity.[7]

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ORDER OF COURT

AND NOW, this **28th** day of November, 2007, after careful consideration, and for the reasons set forth in the accompanying Opinion, it is Ordered that the Defendants' Motion for Summary Judgment (Docket No. 47) is GRANTED.  Judgment is entered in favor of the Defendants on all remaining claims and against Plaintiff. This case is Closed.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge

---

[7] Because I find that neither the County nor the Individual Defendants are liable to Studli, I need not address the remaining arguments in support of summary judgment relating to collateral estoppel and punitive damages.